Mr. Bradley and Mr. Brent, in reply, cited Starkie, Ev. 168, and 2 Chit. Cr. Law, c. 8, pp. 144, 158.

THE COURT (MORSELL, Circuit Judge, absent) instructed the jury, that as the indictment did not describe an indictable offence, and the justice had discretion as to the amount, no corrupt motive can be imputed to him from the smallness of the bail taken. It was not an illegal act, and therefore the motive is immaterial.

And CRANCH, Chief Judge, added, that if any corrupt act was done to obstruct the due course of justice, it might be the ground of a separate count, or indictment; but upon this count the act of taking the bail in $20 only, not being illegal, the court will not admit evidence of a corrupt motive.

## Case No. 16,331.

### UNITED STATES v. SMITH.

[5 Cranch, C. C. 484.] [1]

Circuit Court, District of Columbia. Nov. Term, 1838.

#### SPECIAL BAIL—EVIDENCE.

A certificate, in the usual form, by the officers of the treasury of the United States, that a certain balance is due by the defendant to the United States, is not sufficient cause for bail.

The United States had filed an account from the treasury, certified in the manner required by the statute, stating merely a balance of $11,000 due by the defendant [W. S. Smith].

W. L. Brent, for defendant, moved for leave to appear without special bail; and stated that this court had decided that a mere statement from the treasury, of a balance due, was not even prima facie evidence on the trial, and, therefore, is not sufficient to hold the defendant to bail.

THE COURT (CRANCH, Chief Judge, not sitting in the case) permitted the defendant to appear without special bail.

## Case No. 16,332.

### UNITED STATES v. SMITH.

[Brun. Col. Cas. 82; 4 Day, 121; N. C. Cas. 81.]

Circuit Court, D. Connecticut. 1809.

SLAVE TRADE — ACTION TO RECOVER PENALTY — ACCOMPLICE AS WITNESS—DEPOSITIONS —REDUCTION TO WRITING.

1. In an action of debt to recover the penalty given by the act of congress of May 10, 1800, for transporting slaves from one foreign port or place to another, a particeps criminis, after the expiration of two years from the commission of the offense, without any prosecution against him being commenced, may be compelled to testify against the defendant, though such witness has been out of the jurisdiction of the United States a considerable part of the two years. A fleeing from justice within the proviso to the United States statute of limitations for crimes does not necessarily import a fleeing from prosecution begun.

[Cited in brief in U. S. v. White, Case No. 16,677.]

2. The offense within the act of congress of May 10, 1800, consists in transporting persons from one foreign country to another, with a view to their being sold as slaves; and the offense is complete when the vessel arrives at the place of destination, whether the slaves are sold or not.

3. Where the certificate of a magistrate taking a deposition, stated it to have been written in his presence, without saying by whom, and it appeared also that the substance of it had been reduced to writing by the deponent ten days before at a different place when the magistrate was not present, it was held that such deposition was inadmissible in the United States courts.

[Cited in West v. Davis, Case No. 17,422.]

This was an action of debt to recover double the value of the interest which the defendant [John Smith] had in certain slaves, transported in the brig Heroine, whereof the defendant was sole owner and master, from Africa to Havanna, and there sold by the direction of the defendant, and for his benefit, contrary to the provisions of the act of congress of May 10, 1800 (5 Stat. 167, 170). The first section of that act is as follows: "That it shall be unlawful for any citizen of the United States, or other person residing within the United States, directly or indirectly, to hold or have any right or property in any vessel employed or made use of in the transportation or carrying of slaves from one foreign country or place to another, and any right or property belonging, as aforesaid, shall be forfeited, and may be libelled and condemned for the use of the person who shall sue for the same; and such person transgressing the prohibition aforesaid shall also forfeit and pay a sum of money equal to double the value of the right or property in such vessel, which he held as aforesaid; and shall also forfeit a sum of money equal to double the value of the interest which he may have had in the slaves, which at any time have been transported or carried in such vessel, after the passing of this act, and against the form thereof."

The action was commenced March 31, 1808. The transportation and sale of the slaves were thus alleged in the declaration: "That while said vessel remained on said coast of Africa, to wit, after the first day of December, 1805, and before the first day of April then next following, by direction of said John Smith, and for his use, the crew of said vessel did forcibly seize, carry on board said vessel, and there confine more than one hundred of the natives of Africa, a foreign country, with intent them to transport, and sell and dispose of as slaves in some foreign country. And afterwards said vessel, pursuant to the previous advice and direction of said John Smith, did sail from said coast of Africa, having on board more than one hundred of the said inhabitants and natives of

---

[1] [Reported by Hon. William Cranch, Chief Judge.]